IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY A. SCHMUCKER ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:15-CV-00567-JCH |
| v. ) | |
| ) | |
| PRECISION IRRIGATION, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT PRECISION IRRIGATION, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM**

COMES NOW Defendant Precision Irrigation, Inc, by and through its undersigned counsel and for its Memorandum in Opposition to Plaintiff's Motion to Dismiss Counterclaim, states as follows:

**I. The Exercise of this Court's Supplemental Jurisdiction is Appropriate**

This Court has supplemental jurisdiction over Defendant's Counterclaim because the Counterclaim and Plaintiff's FLSA Complaint derive from a common nucleus of operative facts. The central issue in Plaintiff's FLSA claim is whether Defendant "mislabeled" Plaintiff as an "exempt" salaried employee. Defendant contends, and the evidence will show, that Plaintiff was properly classified as an exempt employee under the FLSA, specifically, under either the "Learned Professional" exemption or the "Bona Fide Administrative Capacity" exemption and thereby exempting Defendant from the overtime requirements of the FLSA.

The factual allegations regarding Plaintiff's duties are spelled out in paragraphs five through sixteen of the Counterclaim. A careful review of these allegations reveals that they are also part of the "common nucleus" of operative facts that form the basis of Plaintiff's underlying

1

FLSA claim. Plaintiff's allegations regarding his duties are contained in paragraphs ten through fourteen of Plaintiff's FLSA Complaint. These are the factual allegations that are at the heart of both Plaintiff's FLSA claim and Defendant's Counterclaim. Moreover, the determination of whether Plaintiff is an exempt employee will closely track the issues involving Defendant's Breach of Fiduciary Duty Counterclaim, which involves a determination of whether Plaintiff occupies a job "of the highest trust and confidence." Western Blue Print Co., LLC v. Roberts, 367 S.W.3d 7, 15 (Mo. 2012).

Moreover, Paragraph 15 of Plaintiff's FLSA Complaint alleges that Defendant made "improper deductions from plaintiff's purported "exempt salary". What Plaintiff described as "improper deductions" actually forms the basis of Defendant's Counterclaim and is specifically referenced in paragraphs ten through twelve of the Counterclaim.[1]

The case law cited by Defendant is inapposite. The Lyon v. Wishman, 45 F.3d 758 (3rd Cir. 1995) and Rivers v. Ndola Pharmacy Corp., 497 F.Supp.2d 381 (E.D.N.Y. 2007) cases merely stand for the proposition that an employment relationship, without more, may not be enough for a Federal Court to exercise supplemental jurisdiction in an FLSA case. The case is bar is similar to the facts presented in the Chaluisan v. Simsmetal East LLC, 698 F.Supp.2d 397 (S.D.N.Y. 2010) where the Plaintiff asserted an FLSA failure to pay overtime claim and also attempted to assert state law claims for breach of contract and unjust enrichment relating to Defendants' alleged failure to pay him vacation pay and a non-discretionary bonus. The Court decided to exercise its supplemental jurisdiction by way of the following analysis:

> Defendants argue that the only connection between Plaintiff's common law claims and his FLSA claim is the employment relationship between himself and Defendants, and that this relationship "is insufficient to render the claims related enough for this Court to exercise supplemental jurisdiction. . . ." Plaintiff argues, however, that his common law

---

[1] As a convenience to the Court, attached as Exhibit A is a Chart Comparing the Allegations of the Plaintiff's Complaint with that of Defendant's counterclaim.

2

    claims share a common nucleus of operative fact with the FLSA claim because "all claims in the complaint relate to Defendants' compensation practices" and the "same evidence—personnel files, time sheets, pay stubs, terms of employment, etc.—will apply in each case, and the same witnesses—plaintiff, his supervisors, perhaps his co-workers—will likely be deposed or called to testify in each case." … Resolution of Plaintiff's FLSA claim will thus require a searching examination of the circumstances of his employment, including his duties and managerial responsibilities, and his compensation. Documentary evidence and testimony from Plaintiff's co-workers and supervisors regarding these matters will be necessary….Plaintiff's state common law claims concerning Defendants' alleged failure to pay him his vested vacation pay and bonus will require consideration of similar evidence. The terms of Plaintiff's employment agreement with Defendants will have to be analyzed. …Resolution of Plaintiff's state and federal claims is also likely to require testimony from the same witnesses. Defendants' managers will likely be called to testify concerning their refusal to pay Plaintiff his vested vacation pay and bonus. Supervisors and co-workers will likely be examined concerning the terms of Plaintiff's employment agreement. With respect to Plaintiff's FLSA claim, these same witnesses will undoubtedly be called to testify concerning the nature of Plaintiff's duties and how he was compensated….The fact that Plaintiff's FLSA and state common law claims will involve similar witnesses and evidence provides a strong rationale for exercising supplemental jurisdiction over Plaintiff's state common law claims.

Id. at 399, 401-403. See also, <u>Thomas v. Ebony LLC</u>, not reported in F.Supp.2d (13-cv-8512)(S.D.N.Y. April 21, 2015); <u>Coyne v. Trustees of Dartmouth</u>, not reported F.Supp.2d (14-cv-517)(D.N.H. March 30, 2015).

  In the case at bar, the witnesses that will be called in the FLSA case are the same as the witnesses in the Counterclaim. The documents used will be substantially the same. These include: personnel files, time sheets, pay stubs, terms of employment, etc. A comparison of the Initial Disclosures of the Parties make it clear that the evidence and the documents will be substantially the same in FLSA claim and the Counterclaim. (The Initial Disclosures of the parties are attached hereto, respectively as Exhibits B (Plaintiff) and C (Defendant)).

### II. Defendant's Counterclaim Does Not Usurp Plaintiff's FLSA Rights

Plaintiff describes Defendant's Counterclaim as a "scare tactic." However, Plaintiff offers no actual proof of such intent. In fact, it is anticipated that Plaintiff will not even dispute the facts that form the basis of Defendant's Counterclaim.

Defendant relies upon the Brennan decision to support the contention that counterclaims are prohibited in an FLSA case. 491 F.2d 1, 4 (5th Cir. 1974). However, in that case, the offsets alleged, and if proven, would have reduced the Plaintiff's pay to a rate that was below the minimum payments required by the FLSA, Id, at 3. That is not the situation in the case at bar. The Plaintiff in this case earned a salary with benefits.

The Counterclaim will in no way delay these proceedings. As previously noted, the witnesses that will be called and documents used in the FLSA case are the same as the witnesses and documents that will be used in the Counterclaim.

### III. Defendant has alleged Sufficient Facts Regarding the Existence of Plaintiff's Fiduciary Duty

Plaintiff makes much of the fact that he is, in fact, not a CPA. However, in order to state a claim for a breach of fiduciary duty, the Missouri Supreme Court has merely required allegations to support a conclusion that Plaintiff occupies a job "of the highest trust and confidence." Western Blue Print Co., LLC v. Roberts, 367 S.W.3d 7, 15 (Mo. 2012). In a conclusory fashion, Plaintiff claims that he did not owe a fiduciary duty to Defendant "as a matter of law" and that the "actual duties performed by Schmucker did not exercise independent judgment and discretion as part of the day to day performance of his duties." (Pl. Brief, p. 7-8). To the contrary, Defendant alleges the following about Plaintiff's duties that involve the highest trust and confidence in its Counterclaim:

> 8.     In his role as an Accountant for Precision Irrigation, Schmucker was responsible

4

>for, among other duties: (I) preparing, examining, and analyzing Precision Irrigation's financial records, including employee payroll and customer financing; (ii) preparing the Company's state and federal income tax returns and ensuring other tax reporting obligations were fulfilled; (iii) maintaining employee files; (iv) ensuring payment of all Company accounts payable and invoicing and collection of all Company accounts receivable; (v) preparing periodic budgets and analyzing the Company's financial performance; (vi) ensuring the proper licensing of Company vehicles; (vii) meeting with insurance brokers and deciphering insurance plans for employees; and (viii) advising Precision Irrigation owners and management regarding retirement planning and savings options.
>
>9.     One of Schmucker's more specific responsibilities in his role as Accountant for Precision Irrigation including ensuring proper payments for Company's bulk fuel purchases.
>
>13.    Schmucker was also responsible for ensuring proper payment of housing costs and proper renewal or cancellation of apartment leases for the Company's seasonal workers.
>
>21.    Because of Schmucker's position, duties and responsibilities for Precision Irrigation, Schmucker owed certain fiduciary duties to Precision Irrigation. These duties included, but are not limited to, (i) the duty to disclose all material facts; (ii) the duty to ensure no material financial harm to the Company; and (iii) the duty to ensure all company expenditures are necessary and valid.

These specific factual allegations clearly state a claim upon which relief may be granted.

### IV. Whether or Not Plaintiff is a Professional Licensed Accountant is Not Determinative

Whether or not Plaintiff is a Professional, Licensed Accountant is not determinative of whether Defendant states a valid Counterclaim. "When a person possesses knowledge or skill superior to that of an ordinary person, the law requires of that person conduct consistent with such knowledge or skill." Business Men's Assurance Co. v. Graham, 891 S.W.2d 438, 453 (Mo.App.W,D. 1994). "A professional person owes a client a duty of care commensurate with "the degree of care, skill and proficiency commonly exercised by ordinarily skillful, careful and prudent professionals." Business Men's Assurance Co. v. Graham, 891 S.W.2d 438, 453 (Mo.App.W,D. 1994), citing Murphy v. A.A. Mathews, 841 S.W.2d 671, 674 (Mo. banc 1992). Defendant's counterclaim clearly articulates the facts that give rise to Plaintiff's duty. In

5

addition to the duties of the Plaintiff's as alleged in paragraphs eight, nine and thirteen listed above, Defendant alleges the following in its Counterclaim:

> 26.   Schmucker had a legal duty to use the skill, prudence, and diligence that a reasonably careful and competent Accountant would have used in similar circumstances in the calculation and payment of bulk fuel invoices and life insurance premiums, in notifying vendors of the Company's intent to terminate housing leases, and in calculating and submitting expense reimbursements (the "standard of conduct").

Plaintiff cannot point to any controlling case law that creates an arbitrary rule to the effect that a cause of action for breach of fiduciary duty cannot be stated against someone that does not hold the official title of a CPA.  Moreover, as the specific factual allegations above make clear, Defendant was not relying solely (or even mostly) on the designation of Plaintiff as a CPA.

### V. Defendant has Alleged Sufficient Facts to Support the Fraudulent Misrepresentation and Negligent Misrepresentation Claims

Finally, Plaintiff alleges that Defendant has failed to plead a sufficient factual predicate for stating a claim for Fraudulent Misrepresentation or Negligent Misrepresentation. However, a fair reading of the specific factual allegations reveals otherwise. Defendant alleges the following in its Counterclaim:

> 30.   Schmucker intentionally and with full knowledge of the falsity of his statements, misrepresented to Precision Irrigation that (I) he had paid and was paying the bulk fuel bills on time and when due; (ii) he had terminated the housing leases for Precision Irrigation's seasonal employees; (iii) he had paid and was paying the life insurance premiums for James Nienhaus and John Loveless on time and when due; and (iv) he was calculating and submitting honest and valid expense reimbursement.
>
> 31.   Schmucker made these representations with the intent that Precision Irrigation rely on such representations, and these representations were material to Precision Irrigation's decision to trust that Schmucker had, in fact, (i) paid the bulk fuel bills on time and when due; (ii) terminated the housing leases for Precision Irrigation's season employees; (iii) paid the life insurance premiums for James Nienhaus and John Loveless on time and when due; and (iv) paid and submitted honest and valid expense reimbursement.
>
> 32.   Precision Irrigation actually and resonably relied on Shcmucker's representations, and suffered damages in the way of late fees, increased insurance premiums, and

6

unnecessary expenses as a result.

34. Schmucker, in the course of his role as Accountant for Precision Irrigation, misrepresented to Precision Irrigation that (I) he had paid and was paying the bulk fuel bills on time and when due; (ii) he had terminated the housing leases for Precision Irrigation's seasonal employees; (iii) he had paid and was paying the life insurance premiums for James Nienhaus and John Loveless on time and when due; and (iv) he was calculating and submitting honest and valid expense reimbursements.

35. Schmucker made these representations with the intent that Precision Irrigation rely on such representations, and these representations were material to Precision Irrigation's decision to trust that Schmucker had, in fact, (I) paid the bulk fuel bills on time and when due; (ii) terminated that housing leases for Precision Irrigation's seasonal employees; (iii) paid the life insurance premiums for James Nienhaus and John Loveless on time and when due; and (iv) paid and submitted honest and valid expense reimbursements.

36. Such representations were false.

37. In making such representations, Schmucker failed to sue the skill, prudence, and diligence that a reasonably careful and competent Accountant would have used in similar circumstances in the calculation and payment of bulk fuel invoices and life insurance premiums, in notifying vendors of the Company's intent to terminate housing leases, and in calculating and submitting expense reimbursements.

38. Precision Irrigation actually and reasonably relied on Schmucker's representations, and suffered damage in the way of late fees, increased insurance premiums, and unnecessary expenses as a result.

These factual allegations, coupled with the introductory facts that are incorporated by reference into these claims, are clearly sufficient to state a claim for Fraudulent Misrepresentation and Negligent Misrepresentation.

## **CONCLUSION**

Wherefore, for the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's Motion to Dismiss Defendant's Counterclaim.

        Respectfully Submitted,

        HOFFMAN & SLOCOMB

        __/s/ Paul T. Slocomb_____

          Paul Slocomb, #44931
          1115 Locust St, Fourth Floor
          St. Louis, MO 63101
          Attorney for Plaintiff
          (314) 753-4364
          Fax (314) 231-0323
          paulslocomb@yahoo.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and accurate copy of the foregoing document was sent via

the ECF/Pacer System on this 1st day of October, 2015 to the following individuals:

James G. Nowogrocki
Richard D. Worth
Weiss Attorneys at Law
1015 Locust , Ste 400
St. Louis MO  63101


        ___/s/ Paul T. Slocomb _____